# IN THE COURT OF APPEALS OF IOWA

No. 23-1125
Filed September 27, 2023

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**B.M., Father,**
    Appellant,

**J.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait,

District Associate Judge.

A mother and father separately appeal the termination of their respective

parental rights. **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel, Council Bluffs, for appellant father.

Norman L. Springer, Jr. of McGinn, Springer & Noethe, P.L.C., Council

Bluffs, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney

General, for appellee State.

Mandy L. Whiddon, Omaha, Nebraska, attorney and guardian ad litem for

minor child.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of one-year-old[1] A.W.'s mother and her legal father.[2] Both parents separately appeal. The mother argues the juvenile court should have applied the higher burden required by the Indian Child Welfare Act (ICWA) and challenges two of the three statutory grounds authorizing termination. The father challenges the statutory grounds authorizing termination, including whether the State made reasonable efforts toward reunification; challenges whether termination is in the child's best interests; and argues his bond with the child should preclude termination.[3]

We first address the mother's contention that the juvenile court should have found ICWA, *see* Iowa Code chapter 232B (2023), applied to this case and applied the beyond-a-reasonable-doubt standard required by 25 U.S.C. section 1912(f). The mother's argument fails. ICWA does not apply to this case because the child does not meet the definition of an "Indian child." *See In re Z.K.*, 973 N.W.2d 27, 28 (Iowa 2022); *In re J.C.*, No. 23-0078, 2023 WL 2673138, at *1 (Iowa Ct. App. Mar. 29, 2023). That definition "means any unmarried person who is under age eighteen and is either (a) a member of an Indian Tribe or (b) is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian

---

[1] The child turned one year old in the time between the termination hearing and issuance of the termination order.

[2] The juvenile court also terminated the parental rights of any biological father of the child.

[3] The father makes a passing reference to wanting additional time to work toward reunification but does not provide any supporting argument. We consider that request waived. *See In re E.W.*, No. 22-0647, 2022 WL 2347196, at *2 (Iowa Ct. App. June 29, 2022) (finding an issue waived when the parent failed to develop a supporting argument).

Tribe[.]" *Z.K.*, 973 N.W.2d at 32 (alteration in original) (quoting 25 U.S.C. § 1903(4)). While the mother is a member of The Winnebago Tribe of Nebraska, an enrollment inquiry to the tribe resulted in the tribe declaring that the child is not an enrolled member and is not eligible for enrollment. As the child does not satisfy either of the requirements to meet the definition of an Indian child, ICWA does not apply to this case.

Moving on to the merits of this case, we conduct de novo review of orders terminating parental rights. *Id.* Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge any of the three steps, we need not address it on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

As to the mother's challenge to the statutory grounds for termination, she only challenges two of the three grounds relied upon by the juvenile court.[4] So we affirm on the unchallenged ground, section 232.116(1)(*l*). *See In re L.J.*, No. 21-0507, 2021 WL 4891064, at *1 (Iowa Ct. App. Oct. 20, 2021) ("The father only challenges the evidence supporting the first two grounds. Accordingly, we may affirm on the unchallenged ground."). As the mother raises no additional challenges to the termination of her parental rights, we end our analysis with respect to her appeal and turn our attention to the father.

---

[4] The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (h), and (*l*).

The juvenile court terminated the father's parental rights to the child under section 232.116(1)(b), (e), and (h). As the father's rights were terminated on multiple grounds, we affirm if any one of the grounds is supported by the record. *See In re A.B.,* 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We choose to focus on paragraph (h), which permits termination upon clear and convincing proof that (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent. Iowa Code § 232.116(1)(h).

The father only attempts to challenge the fourth element. He "contends the child could *eventually* be returned to his *care.*" (Emphasis added.) But when determining whether the fourth element is met, we consider whether the child could be returned to the custody of the parent at the time of the termination hearing, not some indeterminate time in the future. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.,* 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

Besides the father's admission that the child could not be placed in his custody at the time of the termination hearing, our independent review of the record confirms that the child could not be returned to the father's custody at the time of the termination hearing. During the roughly twelve-month period between initial

removal[5] and the termination hearing, the father has been largely uninvolved with the child. The father was incarcerated when the child was born and the underlying child-in-need-of-assistance case began. The father was released from prison into a residential correctional facility about one month after the child's birth. He saw the child one time in the month following his release from prison. After that one visit, the father did not respond to efforts to establish visitation for approximately the next nine months. He only began visits with the child about one month before the termination hearing. This leaves us to question if he has the fundamental tools and interest necessary to care for the child. Furthering our concern, at the time of the termination hearing, the father was temporarily living at a hotel with the mother—suggesting he currently lacks a baseline of stability. Additionally, there are concerns about the mother's sister using methamphetamine at the hotel where the mother and father reside. While it was contested whether the sister lived at the hotel with the parents, at the very least, the evidence shows that the sister frequents the hotel often enough to cause concern to the father's parole officer. Finally, the fact that the father chooses to continue to reside with the mother with her unresolved substance-abuse issues[6] contributes to our conclusion that the child cannot be safely placed in the father's custody at this time.

---

[5] The child was removed on the day of the child's birth when drug screens revealed both the mother and child were positive for amphetamines.

[6] The mother no-showed twelve of the sixteen times that she was directed to drug test and refused to test two additional times. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive for illegal substances). When she has tested, she tested positive for illegal drugs. She has also failed to follow through with recommended substance-abuse treatment.

In the face of the evidence supporting the conclusion that the child cannot be returned to his custody, the father contends reunification is not possible because the State failed to make reasonable efforts towards reunification. While not a strict substantive requirement for termination, "[t]he State must show reasonable efforts [toward reunification] as part of its ultimate proof that the child cannot be safely returned to the [custody] of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (first alteration in original) (citation omitted). However, a parent cannot challenge reasonable efforts for the first time on appeal, or even first raise a challenge at the termination hearing. *See In re E.H.*, No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021) (collecting cases). A parent must alert the juvenile court of any perceived deficiency in services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). When a parent fails to timely request additional or different services, the parent waives any reasonable-efforts challenge. *Id.* The father never alerted the court to any purported deficiency in services, so his reasonable-efforts challenge is waived. We ultimately conclude a statutory ground authorizing termination is satisfied.

Next, we turn to the father's claim that termination is not in the child's best interests. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). The child is bonded to her foster family, and the family is willing to serve as a permanent placement for the child. Further, in his testimony at the

termination hearing, the father conceded that his absence from the child's life would not be harmful to her. We conclude termination serves the child's best interests because it gives her the best chance to reach permanency and stability.

Finally, the father points to his purported bond with the child to argue against termination. This implicates section 232.116(3)(c), which permits the court to forgo termination when termination would be detrimental to the child due to the strength of the parent-child bond. It is the parent's burden to establish this exception to termination. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). It is not enough to establish the existence of a bond; instead, the parent must prove the bond is so significant that severing it would be detrimental to the child. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The father has not established such a bond. As previously noted, the father conceded the child would not be harmed by his absence from her life. We do not apply this permissive exception to termination.

**AFFIRMED ON BOTH APPEALS.**